# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MICHELE LAWSON,

     Plaintiff,

     v.

KANSAS CITY, KANSAS PUBLIC
SCHOOLS,

     Defendant.

Case No. 19-CV-02344-JAR-JPO

## MEMORANDUM AND ORDER

This dispute arises out of Plaintiff Michele Lawson's claim that she was not compensated for paid leave time by her former employer, Defendant Kansas City, Kansas Public Schools ("KCKPS"). Before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Petition for Damages (Doc. 18). Defendant moves to dismiss the First Amended Petition for failure to state a claim for contract breach, violation of the Kansas Wage Payment Act ("KWPA"), and discrimination and retaliation under the Americans with Disabilities Act ("ADA"). The motion is fully briefed, and the Court is prepared to rule. For reasons discussed below, Defendant's motion is **granted in part and denied in part.** Defendant's motion to dismiss Plaintiff's claim for breach of contract is granted. Defendant's motion to dismiss Plaintiff's KWPA claim and discrimination and retaliation claims under the ADA is denied.

## I.    Legal Standard

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative

level"[1] and must include "enough facts to state a claim for relief that is plausible on its face."[2] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[3]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[4]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[5]  Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[6]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[7]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[8]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[9]  "A claim has facial plausibility when the plaintiff pleads factual content

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004)).

[2] *Id*. at 570.

[3] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[5] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[6] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[7] *Id*. (quoting *Twombly*, 550 U.S. at 555).

[8] *Id.* at 678–79.

[9] *Id*. at 679.

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

Although "[t]he 'usual rule' is 'that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss,'"[11] "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[12] "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied."[13]

Here, the Court considers the KCKPS Board Policies concerning attendance, absences, leaves, and vacations in deciding Defendant's motion to dismiss. Plaintiff did not attach the Board Policies to her Amended Petition, but Defendant attached them to its motion to dismiss.[14] The Court considers the Board Policies without converting the motion to one for summary judgment because they are expressly referred to in Plaintiff's First Amended Petition, and because Plaintiff argues "Defendant withheld [her] pay in violation of Defendant's own policies and procedures."[15] The Board Policies govern the number of days of paid leave KCKPS employees are given. Thus, they are central to Plaintiff's claims that Defendants discriminated and retaliated against her by withholding pay for her leave days. Further, although Plaintiff

---

[10] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

[11] *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (citing *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1201, 1215 (10th Cir. 2007)).

[12] *Id.* (citing *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

[13] *Burke v. Holdman*, 750 F. App'x 616, 620 (10th Cir. 2018) (citing *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997)).

[14] Doc. 19-1 at 4–12. Marked as "Exhibit A."

[15] Doc. 17 at 5. Although Plaintiff refers to the KCKPS Board Policies in her First Amended Petition as "KCKPS employee handbook," the Court is satisfied that she is referencing the KCKPS Board Policies because she states: "Plaintiff replied to Faircloth stating that the KCKPS employee handbook required documentation only for the use of three (3) consecutive disability days." *Id.* at 2.

argues the Board Policies are not appropriate for consideration on a motion to dismiss because they tend to refute her factual allegations, she does not dispute their authenticity.

The Court does not consider a second exhibit attached to Defendant's motion to dismiss: a screenshot of a computer program showing Plaintiff's employee absence history.[16]  Plaintiff does not refer to this document in her complaint, nor do her claims rely on it; days of paid or unpaid absences are not relevant to whether Plaintiff was adequately compensated for paid-leave days at this stage of litigation.

## II.    Factual Allegations

The following facts are alleged in the First Amended Petition and the Court draws all reasonable inferences in favor of Plaintiff.

### Plaintiff's Paid Leave Requests

 Plaintiff worked for Defendant from the fall of 2017 to the spring of 2018.  In March of 2018, she requested leave time for the last week in March.  She reported to her supervisor that she requested leave to care for an "indignant and dying former relative."[17]  Plaintiff's former relative suffered impairment and/or alteration of a major life activity and was therefore perceived to be disabled.[18]  Plaintiff stated at the time of her leave request that she may need additional days of leave beyond those initially requested.  Plaintiff's supervisor, Angela Monroe, and the leave administrator, Stephanie Pepper, approved the leave request.  Other members of the leave administration team—Elizabeth Faircloth and DeJanee Harris—also told Plaintiff that her request could be approved.

---

[16] Doc. 19-1 at 13.  Marked as "Exhibit B."

[17] *Id.* at 1.

[18] *See id.* at 4.

On April 4, 2018, Plaintiff emailed Faircloth to request two additional days of leave and a date to return to work. Faircloth informed Plaintiff that she would be required to use sick days, and that these additional days of leave would require documentation of the reason for taking leave. Plaintiff replied that the "KCKPS employee handbook" only required documentation for the use of three consecutive sick days.[19] Since Plaintiff was only requesting two days, she told Faircloth that no documentation was necessary. Faircloth replied that Plaintiff was correct about this policy, but the administration team held the right to request information and documentation from anybody, and it was choosing to exercise that right.

On April 13, 2018, Plaintiff received her paycheck, which included pay for all of the approved leave time. Shortly thereafter, Plaintiff gave notice of her intent to resign and that her last day would be April 27, 2018.

Because Plaintiff had additional leave time, she requested and received approval from her supervisor for leave for a personal dental appointment. During Plaintiff's dental appointment on April 26, 2018, she sent a text message to her supervisor that her appointment was taking longer than expected. Plaintiff's supervisor responded positively and told Plaintiff that she would see her the following day, Plaintiff's last day of work. About one hour later, the supervisor emailed Plaintiff not to come in on her last day.

On April 27, 2018, Plaintiff's final paycheck was deposited into her account. The check was in the amount of one-third of her usual pay. Plaintiff asked her former supervisor why the check amount was reduced. Her former supervisor responded that Plaintiff owed the school district for the leave days that were approved and paid for on her April 13, 2018 check. Plaintiff

---

[19] *Id.* at 2.

further inquired, "Is this about the time that I took to care for my ex relative?"[20]  Plaintiff's former supervisor told Plaintiff that was correct.  The supervisor also told Plaintiff that these leave days needed to be deducted from her final check.

Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting discrimination based on disability, retaliation and hostile work environment.[21]  On March 27, 2019, the EEOC issued a notice of a Right to Sue.  Plaintiff filed this action within 90 days of the receipt of the Right to Sue letter.[22]  Although Plaintiff states "allegations asserted in the charge are incorporated, by reference, as if more fully set forth herein,"[23] the Court does not and cannot consider the EEO charge because she does not attach it to her amended petition and "[c]harges shall not be made public by the [EEOC]."[24]

### KCKPS Board Policies

The KCKPS Board Policies allocate the following leave for an employee working 240 or more "duty days" within one fiscal year: 14 disability days, 2 personal days, and 3–5 bereavement days.[25]  Additionally, employees working 261 duty days are allotted 10 days of vacation leave each fiscal year.  The Board Policies further provide that "Emergency and Professional Leave are allowed only on a case by case basis."[26]

---

[20] *Id.* at 3.

[21] Although Plaintiff refers to the EEOC as "Equal Opportunity Employment Commission," the Court construes this as Equal Employment Opportunity Commission.  *See id.* at 4.

[22] Doc. 1.  Plaintiff filed her original complaint on June 25, 2019. *Id.*

[23] Doc. 17 at 4.

[24] 42 U.S.C. § 2000e-5(b).

[25] The Board Policies define "day" as "a day on which the employee applying for leave would normally have reported for duty."  Doc. 19-1 at 5.

[26] Doc. 19-1 at 5.

Although Plaintiff alleges that KCKPS employees are given immediate access to sick ("disability days"), vacation, and personal days at the time of hire, the Board Policies stipulate leave days are "provisionally credited."[27]  Specifically:

> Employees are provisionally credited with Disability and Personal Leave on July 1 or the employee's first duty day whichever occurs last.  Employees commencing service during the year are provisionally credited with prorated Disability and Personal Leave. Disability Leave allowed shall be reduced by one (1) day for each proceeding whole or major portion (50%) of a month not worked. Personal Leave allowed shall be reduced to one (1) day for employees commencing service after December.[28]

### *Personal Leave*

The Board Policies provide: "Personal Leave is available to all eligible employees on their first duty day.  However, Personal Leave must be requested in writing from and approved by the employee's immediate supervisor and Human Resources at least five (5) days prior to the date of the requested leave."[29]

### *Vacation Leave*

The Board Policies differ for vacation leave.  Employees who work 261 duty days are allotted ten paid vacation days per fiscal year.[30]  However, "Vacation Leave is not available for use by new employees until they have completed six (6) months of employment."[31]  And, special rules apply to employees who separate from employment:

> Employees who separate from employment or transfer to a potion [sic] with less than 261 duty days during the middle of the fiscal year who have already used all of their allowed Vacation Leave for that year will have their final pay reduced based on the Vacation

---

[27] Doc. 19-2 at 5.

[28] *Id.*

[29] Doc. 19-1 at 9.

[30] *Id.* at 10.

[31] *Id.* at 11.

Leave allowed prorated by the number of duty days worked. For
example, the final pay of an employee allowed ten (10) days of
Vacation Leave who takes all ten (10) days and then separates
from employment at the end of December would be reduced by the
amount for five (5) days of Vacation Leave.[32]

### *Disability Leave*

The Board Policies provide disability leave may be used for absences due to illness or

injury of either the employee or the employee's dependent child. Disability leave for absences

due to illness or injury of the employee's spouse or parent is only available to employees

consecutively employed for the previous 12 months before leave is taken. Further, employees

who work 240 or more duty days accumulate additional disability leave days.

The Board Policies contain special rules for disability leave when an employee separates

from employment:

If an employee separates from employment mid-year, his/her final
salary payment will be reduced to account for any provisional
Disability Leave taken. For example, if a 205 or less duty day
employee separates from employment in October after taking 10
days Disability Leave and had no accumulated Disability Leave
from prior year, then the employee's final paycheck would be
reduced by the 7 days of provisional Disability Leave taken.[33]

## III. Discussion

Plaintiff alleges the following claims for relief in her First Amended Petition: (1) breach

of contract under Kansas law; (2) violation of the KWPA; (3) discrimination under the ADA;

and (4) retaliation under the ADA. Additionally, Plaintiff argues that Defendant's actions and

the actions of its agents and employees are willful and malicious, the result of evil motive, or are

---

[32] *Id.*

[33] Doc. 19-2 at 8.

in reckless indifference to her rights.  Therefore, Plaintiff argues, she is entitled to punitive damages.

### A.      Breach of Contract Claim

Plaintiff alleges the existence of an employment contract that Defendant breached by withholding her pay and attempting to charge her for approved time off.  She further alleges she suffered damages, which she mitigated, as a direct and proximate cause of Defendant's breach.  Because Plaintiff fails to plead facts to establish the existence of an employment contract with Defendant, she fails to state a plausible claim for breach of contract.

Kansas follows the common law doctrine of employment-at-will.[34]  "The employment-at-will doctrine holds that employees and employers may terminate an employment relationship at any time for any reason, unless there is an express or implied contract governing the terms of employment."[35]  "A contract implied in fact arises from facts and circumstances showing mutual intent to contract."[36]  The determination of whether there is an implied employment contract is normally a question of fact for the jury.[37]  Kansas courts consider several factors to determine whether an implied contract exists:

> (1) written or oral negotiations, (2) the parties' conduct from the beginning of the employment relationship, (3) the usages of the business, (4) the situation and objective of the parties giving rise to the relationship, (5) the nature of the employment, and (6) any other circumstances surrounding the employment relationship that tend to explain or clarify the parties' intentions at the time employment began.[38]

---

[34] *Johnson v. Nat'l Beef Packing Co.*, 551 P.2d 779, 781 (Kan. 1976).

[35] *Peters v. Deseret Cattle Feeders, LLC*, 437 P.3d 976, 978 (Kan. 2019) (citing *Lumry v. State*, 385 P.3d 479 (Kan. 2016).

[36] *Id.* at 982 (quoting *Mai v. Youtsey*, 646 P.2d 475 (Kan. 1982)).

[37] *Id.*

[38] *Id.* (citing *Hall v. Kan. Farm Bureau*, 50 P.3d 495, 504–03 (Kan. 2002)).

Plaintiff alleges that she and Defendant had an employment contract without stating any facts in support. She does not allege the existence of an express contract, nor any facts or circumstances that would give rise to an implied contract in Kansas. Therefore, her factual allegations establish the existence of the default employment relationship in Kansas, employment-at-will. Accordingly, the Court does not accept as true Plaintiff's legal conclusion that a contract exists and therefore finds she fails to state a claim for contract breach.

Plaintiff's reliance on *Patterson v. McLean Credit Union*[39] for the proposition that an at-will employment relationship constitutes an employment contract misunderstands the Supreme Court's holding in a case that was legislatively overruled by the Civil Rights Act of 1991. *Patterson* limited the application of § 1981 of the Civil Rights Act of 1866 in the employment setting to prohibit racial discrimination in the making of contracts.[40] It found that racial harassment that does not prevent the formation of a contract was not actionable under that section.[41] As such, it is not applicable here. Moreover, *Patterson* concerned the scope of private rights of action under § 1981 and tort claims under North Carolina law; it is not instructive as to what constitutes formation of a contract under state law, nor does it concern Kansas contract law in any way. Plaintiff's claim for breach of contract is, therefore, dismissed.

### B.     Kansas Wage Payment Act Claim

Plaintiff alleges Defendant violated the KWPA by reducing her final paycheck for paid-leave days she used with her supervisor's approval. Plaintiff alleges she and Defendant had an "employment relationship" as defined by the KWPA, and Defendant failed to pay qualifying

---

[39] 491 U.S. 164, 176–178 (1989).

[40] *Id.* at 178–179.

[41] Section 1981 now provides "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

"wages" as required by the Act.  Plaintiff therefore requests statutory liquidated damages, pre-judgment interest, costs, and other relief that the Court deems just and equitable.

The KWPA "is an expansive and comprehensive legislative scheme that is broad in its scope and the rights created for Kansas workers to secure unpaid wages from their labors."[42] The KWPA states that "[e]very employer shall pay all wages due to the employees of the employer at least once during each calendar month."[43]  The statute defines "wages" as "compensation or other basis less authorized withholding and deductions."[44]  When an employer willfully fails to pay an employee his or her "wages due," the employer is liable for both the wages due and a penalty in an amount up to 100% of the unpaid wages.[45]

First, Defendant argues the KWPA provides no substantive rights and is only a mechanism for recovery.  However, the Kansas Supreme Court has found the KWPA "provides for remedies and penalties for violation of its requirements."[46]  Defendant's argument that Plaintiff cannot prevail on a claim under the KWPA because she failed to adequately plead breach of contract, therefore, fails.  Plaintiff has adequately pled a claim under the KWPA by alleging that she was owed wages for paid-leave time that she did not receive.

Next, Defendant argues Plaintiff's claim based on a willful violation of the KWPA is barred because it is outside the one-year statute of limitations set by K.S.A. § 60-514, as

---

[42] *Campbell v. Husky Hogs, LLC*, 255 P.3d 1, 6 (Kan. 2011).

[43] K.S.A. § 44-314(a).

[44] K.S.A. § 313(c).

[45] K.S.A. § 315(b).

[46] *Craig v. FedEx Ground Package Sys., Inc.*, 335 P.3d 66, 73 (Kan. 2014); *see also Husky Hogs, LLC*, 255 P.3d at 7 ("we find such a cause of action is necessary when an employer fires a worker who seeks to exercise KWPA rights by filing a wage claim").

articulated in *Ingham v. Digital Solutions, Inc.*[47]  Among other actions, K.S.A. § 60-514 requires

actions based on statutory penalties to be brought within one year.[48]  *Ingham* found that

> K.S.A. § 44-315(b) specifically provides that an employer who
> *willfully* and *knowingly* fails to provide an employee earned wages
> is liable for a *penalty* in addition to the wages which the employer
> is liable to pay.  The statute's use of the term 'penalty,' as well as
> its requirement that egregiousness—in the form of knowledge and
> willfulness—be shown before additional damages are imposed,
> convinces the court that K.S.A. § 44-315(b) is a 'statutory penalty'
> according to its ordinary meaning.[49]

This Court agrees that the penalty in K.S.A. § 44-315(b) qualifies as a "statutory penalty"

to place it within the one-year statute of limitations required by § 60-514.  However, the Court

finds for purposes of this motion that Plaintiff filed her action within the one-year statute of

limitations.  Although Plaintiff alleges that she resigned and received her last paycheck on April

27, 2018, and filed her initial complaint in this matter on June 25, 2019, the pendency of her

administrative claims tolled the statute of limitations.

> It has long been established in Kansas that "if a person is prevented
> by the pendency of legal proceedings from exercising his legal
> remedy, the running of the statute of limitations applicable to the
> remedy is postponed; or if the statute has commenced to run, it is
> suspended or tolled during the time the restraint incident to the
> proceedings continues."[50]

Such legal proceedings include administrative proceedings, given a plaintiff's duty to exhaust

administrative remedies.[51]

---

[47] No. 98-2486-JWL, 2000 WL 126920 at *3 (D. Kan. Jan. 19, 2000).

[48] K.S.A. § 60-514(c).

[49] *Ingham*, 2000 WL 126920 at *3.

[50] *Leek v. Endsley*, No. 103,693, 2011 WL 588632 at * 3–4 (Kan. Ct. App. Feb. 11, 2011) (quoting *Newcom, Adm'r v. Potterf*, 318 P.2d 1069, 1071 (Kan. 1957)).

[51] *Wagher v. Guy's Foods, Inc.*, 885 P.2d 1197, 1206 (Kan. 1994).

Although Plaintiff does not plead the exact date she filed her EEOC charge, she pleads that it was "timely," which Defendant does not refute. The statute of limitations was tolled during the pendency of Plaintiff's claims with the EEOC and began to run again on March 27, 2019, when Plaintiff received notice of her right to sue. Three months later, Plaintiff filed the current action. Accordingly, Plaintiff's claim for willful violation of the KWPA complies with the one-year statute of limitations set by K.S.A. § 60-514.

## C.    ADA Claims

### 1.    Discrimination

Under the ADA, an employer is prohibited from "discriminat[ing] against a qualified individual on the basis of disability."[52] This includes discrimination against "a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."[53] "This prohibition is known as the 'association provision' of the ADA."[54] To prove a prima facie case of associational discrimination, a plaintiff must show (1) "plaintiff was qualified for the job at the time of the adverse employment action," (2) "plaintiff was subjected to adverse employment action," (3) "plaintiff was known by his employer at the time to have a relative or associate with a disability," and (4) "the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision."[55] The Tenth Circuit takes a "flexible approach to defining adverse actions."[56] "[T]here is no 'set rule

---

[52] 42 U.S.C. § 12112(a).

[53] 42 U.S.C. § 12112(b)(4).

[54] *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1154 (10th Cir. 2008) (citing *Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1082 (10th Cir. 1997)).

[55] *Den Hartog*, 129 F.3d at 1085.

[56] *Mestas v. Town of Evanscille*, 786 F. App'x 153, 158 (10th Cir. 2019).

regarding what constitutes an "adverse employment action."'  Instead, we make that determination on a case-by-case basis."[57]

For purposes of this motion, it is undisputed that Plaintiff is a "qualified individual" because she "can perform the essential functions of the employment position" that she held from the fall of 2017 to the spring of 2018.  It is further undisputed that Defendant knew Plaintiff had a former relative with a disability for whom she cared because she specifically referenced her former relative's disability when she requested time off from work.[58]  For reasons discussed below, the Court finds Plaintiff has pled sufficient facts to show she plausibly suffered an adverse employment action, and that her former relative's disability could reasonably be inferred as the reason for that adverse action.

### a.        Adverse Employment Action

First, Defendant argues that Plaintiff fails to plead that it took an adverse employment action.  Plaintiff alleges Defendant charged her for using leave time by docking or withholding her pay that resulted in payment of only one-third of the amount she is due.  Defendant's failure to pay Plaintiff the full amount of her final paycheck is an adverse employment action because failure to receive pay for time worked or time-off benefits comes at a detriment to an employee.

The KCKPS Board Policies do not defeat the plausibility that Defendant's actions were adverse.  Based on Plaintiff's employment from sometime in the fall of 2017 to sometime in the spring of 2018, the KCKPS Board Policies indicate that Plaintiff would have accrued some amount of personal and vacation leave.  Construing these facts in favor of Plaintiff, it is plausible

---

[57] *Id.* at 157–58 (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999)) (citation omitted).

[58] 42 U.S.C. § 12111(8).

that she suffered an adverse employment action when Defendant failed to pay her for paid-leave days she accrued, used, and received approval to use.

### b. Reasonable Inference that Adverse Employment Action Occurred because of Associate's Disability

Plaintiff's factual allegations allow the Court to reasonably infer that her adverse employment action occurred as a result of her association with a person with a disability. When Plaintiff asked in regards to her reduced final paycheck, "[i]s this about the time that I took to care for my ex relative?", Defendant responded affirmatively.[59] Plaintiff's factual allegations rise above the level of a formulaic recitation of the elements. Plaintiff established plausibility of a reasonable inference of discrimination by alleging that she associated with an individual with a disability, was docked pay, and that the reason for her reduction in pay was acknowledged by her employer as being "about the time" she took to care for her former relative with a disability. Accordingly, the Court accepts Plaintiff's allegations as true, and may not dismiss on the ground that it appears unlikely the allegations can be proven.[60]

### 2. Retaliation

The ADA also provides "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter."[61] "To establish a prima facie case of ADA retaliation, a plaintiff must prove that (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity;

---

[59] Doc. 17 at 3.

[60] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[61] 42 U.S.C. § 12203(a).

and (3) there was a causal connection between the protected activity and the adverse employment action."[62]  "To establish a causal connection, [a plaintiff] must present evidence of circumstances that justify an inference of *retaliatory motive*."[63]  "The Supreme Court has likened this burden to a showing of 'but-for causation.'"[64]  "The evidence of but-for causation must be based on more than mere speculation, conjecture, or surmise."[65]

Plaintiff argues Defendant retaliated against her by withholding pay because she took the protected action of taking approved time off to care for her disabled former relative.  She alleges Defendant was "in violation of [its] own policies and procedures" when it charged her for days she took off work, with approval from her supervisors.[66]  As discussed above, Plaintiff's alleged pay reduction is sufficient to show an adverse employment action.  Additionally, Plaintiff sufficiently pled a causal connection between her request for leave to care for her former relative with a disability and her reduction in pay when Defendant expressly told her the reduction in pay was due to time she took to care for that former relative.  The remaining issue regarding Plaintiff's retaliation claim is, therefore, whether her request for leave to care for her relative constitutes a well-pled protected action.

### a.    Protected Action Based on the Disability of an Associate

Several federal circuit courts acknowledge that the ADA prevents retaliation on the basis of a qualified employee's association with a person with a disability.[67]  However, they also find

---

[62] *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1186–87 (10th Cir. 2016) (citing *Anderson*, 181 F.3d at 1178).

[63] *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018) (citing *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) (emphasis in original)).

[64] *Id.* (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).

[65] *Id.* (quoting *Nassar*, 570 U.S. at 360 ).

[66] Doc. 17 at 5.

[67] *Larimer v. Int'l Bus. Machs. Corp.*, 370 F.3d 698, 702–03 (7th Cir. 2004) (acknowledging a plaintiff may bring a retaliation claim based on action taken on behalf of an another person when the other person has a

the right to an accommodation is limited to disabled employees, and "does not extend to a nondisabled associate of a disabled person."[68]  Accordingly, seeking *accommodation* for a person with a disability associated with the qualified individual does not constitute a protected activity for purposes of an ADA retaliation claim.  However, requesting *leave* to care for an associate with a disability may qualify as a protected action.[69]

The Tenth Circuit has acknowledged that requests for leave constitute an accommodation that may qualify as a protected action.[70]  "Although the notice or request does not have to be in writing, be made by the employee, or formally invoke the magic words of 'reasonable accommodation,' it nonetheless must make clear that the employee wants assistance for his or her disability.  That is, the employer must know of both the disability and the employee's desire for accommodations for that disability."[71]  Although it is clear that the employee's relatives are not entitled to accommodations, the Tenth Circuit has not squarely addressed the issue of whether a plaintiff's request for leave to care for another person with a disability constitutes a protected action under the ADA.  Yet, other districts have recognized that taking action on behalf of another individual with a disability can constitute a protected action under the ADA.[72]

---

disability); *Oliveras-Sifre v. Puerto Rico Dep't of Health*, 214 F.3d 23, 26–27 (1st Cir. 2000) ("[Plaintiffs] do not allege a specific association with a disabled individual, but contend, in essence, that they were punished for their advocacy on behalf of individuals with AIDS . . . such a claim implicates the prohibition against retaliation contained in Title V of the ADA"); *see also Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009) (finding in the Family Medical Leave Act ("FMLA") context "that firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee").

[68] *Larimer*, 370 F.3d at 700; *Erdman*, 582 F.3d at 509.

[69] *See Erdman*, 582 F.3d at 509.

[70] *Mestas*, 786 F. App'x at 157; *see also Mountain Coal*, 830 F3d 1178, 1189 (10th Cir. 2016).

[71] *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999)) (emphasis omitted).

[72] *See Aguirre v. Mayaguez*, 59 F. Supp. 3d 340, 355 (D.P.R. 2014) (finding plaintiff's claim for ADA disability retaliation survived summary judgment when plaintiff claimed she was retaliated against for expressing opposition to a shift-change because it impacted her ability to care for her disabled father); *Rhodes v. Tuscaloosa Cty. Bd. of Educ.*, 935 F. Supp. 2d 1226, 1254 (N.D. Ala. 2013) (finding ADA protected activity for an employee's advocacy for her son with disabilities to her employer); *McMahan v. UMG MFG. & Logistics, Inc.*, No. 1:06-cv-

Given that several federal courts have recently suggested that such an action may constitute a protected action under the ADA, and this is an open question in the Tenth Circuit, the Court finds it inappropriate to conclude that Plaintiff is not entitled to relief based on a claim of retaliation at this preliminary stage of litigation. Accordingly, the Court finds Plaintiff's factual allegations sufficiently establish a protected action for purposes of this motion. Plaintiff did not request accommodation for her former relative's disability, which clearly does not qualify as a protected action under the ADA. Instead, Plaintiff requested time off to care for her former relative. Taking these well-plead facts as true, Plaintiff has shown a protected action exists, and adequately pled a claim for ADA retaliation.

### 3. Defendant's Board Policy Arguments

Defendant makes two arguments that the KCKPS Board Policies show Plaintiff failed to state a discrimination or retaliation claim under the ADA.

First, Defendant's argument that it did not retaliate against Plaintiff because it approved all paid-leave time she requested is not persuasive. Although Defendant initially approved Plaintiff's requested leave, that does not preclude a finding that it retaliated against Plaintiff when she separated from employment a few weeks later by docking her pay for that time. Defendant points to *Ewing v. Doubletree*[73] to suggest that when an employer follows its own policies, that precludes a finding that an employer's reason for terminating an employee is pretext for retaliation. Defendant argues, in turn, that it merely followed its Board Policies by requesting that Plaintiff reimburse it for leave days she used but had not yet accumulated.

1149-DFH-JMS, 2008 WL 906152 at *5 (S.D. Ind. Mar. 31, 2008) (finding ADA protected activity where plaintiff told coworker with a disability about what plaintiff believed was an improper activity by their employer).

[73] 673 F. App'x 808, 810–12 (10th Cir. 2016).

However, *Ewing* is not instructive here.  The *Ewing* plaintiff failed to present evidence to suggest her employer had knowledge of her disability which eliminated the possibility of a pretextual reason for her termination.[74]  Here, the issue is not pretext, but whether an adverse employment action occurred following Plaintiff's engagement in a protected activity.  Moreover, Defendant is not entitled to an assumption that it followed its Board Policies.  Although the Board Policies require employees to reimburse Defendant for leave days used but not accumulated, it is not clear whether Defendant compensated Plaintiff for days she did accumulate, or how many days she accumulated in the first place.  Accordingly, the Court does not consider *Ewing*.  To the extent Defendant argues its Board Policies apply to defeat Plaintiff's discrimination claim in addition to her retaliation claim, the Court rejects its argument for the same reasons.

Next, Defendant's argument that Plaintiff failed to state a discrimination or retaliation claim because she did not qualify for disability leave under the Board Policies is also flawed.  While the Board Policies provide that caring for a former relative does not qualify for disability leave time,[75] they do not disprove that Plaintiff was discriminated or retaliated against by being docked pay for other types of paid-leave time she had accrued, such as personal leave or vacation leave.  Moreover, Defendant admits in its reply brief that Plaintiff used and received payment for disability leave, and her pay was only reduced based on four days of *vacation* leave that she did not accrue:

> Plaintiff had exhausted both of her personal days, had used 5 ½ days of disability leave and used her entire allotment of ten (1) days of annual vacation leave.  However, because Plaintiff had not been employed for an entire year, she had not accrued all ten (10) of the vacation days that were provisionally credited to her at the

---

[74] *Id.* at 812.

[75] Doc. 19-1 at 6. "Disability Leave is allowed for employees to use for absences caused by personal sickness or injury of the employee or the employee's *dependent child* . . . [and for employees consecutively employed for the previous 12 months] *the employee's spouse or parent*." *Id.* (emphasis added).

> beginning of her employment.  Plaintiff had used four (4) days that
> she had not accrued.  *As a result, Plaintiff's final paycheck was
> reduced to account for these unaccrued vacation days.*[76]

This inconsistency reinforces the Court's finding that Plaintiff has stated valid claims for

discrimination and retaliation.  It is plausible that Plaintiff was not compensated for paid leave

time—whether classified as vacation, personal, or disability—based on the disability of her

former relative with whom she associated.  Accordingly, Plaintiff has stated a valid claim for

disability discrimination and retaliation under the ADA.

### D.      Punitive Damages

Defendant argues Plaintiff is not entitled to punitive damages as to any of her claims and

is not entitled to punitive or compensatory damages as to her ADA retaliation claim.

According to the statutory language of the ADA, compensatory and punitive damages are

not available for an ADA retaliation claim, but a plaintiff may be entitled to equitable relief.[77]

Because Plaintiff may be entitled to such relief, her inability to collect compensatory or punitive

damages under this theory does not bar her retaliation claim.

Plaintiff is not entitled to punitive damages on her other claims because Defendant—a

public school—is a governmental entity.  Plaintiff may not recover punitive damages based on

her KWPA claim because punitive damages may not be recovered against government entities

under Kansas law.[78]  Similarly, punitive damages may not be recovered from a governmental

entity based on an ADA discrimination claim.[79]  However, Plaintiff's inability to collect punitive

---

[76] Doc. 24 at 6 (emphasis added).

[77] *Boe v. AlliedSignal, Inc.*, 131 F. Supp. 1197, 1203 (D. Kan. 2001).

[78] K.S.A. § 75-6105.

[79] *Hamer v. City of Trinidad*, 924 F. 3d 1093, 1109 (10th Cir. 2019) (citing *Barnes v. Gorman*, 536 U.S. 181, 189 (2002)).

damages does not extinguish her claims.  She may still be entitled to other forms of relief for her KWPA and ADA claims.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss Plaintiff's First Amended Petition for Damages (Doc. 18) is **granted in part and denied in part.**  The portion of Defendant's motion that requests dismissal of Plaintiff's breach of contract claim is **granted.**  The portions of Defendant's motion that request dismissal of Plaintiff's KWPA claim and discrimination and retaliation claims under the ADA are **denied.**

**IT IS SO ORDERED.**

Dated: March 31, 2020

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE